The next case for argument this morning is 14-1772 Volstar Technology v. Amazon. I'll give you as much time as you need to settle in. Mr. Rothman, good morning. Good morning, Your Honors. May it please the Court. Volstar thought a trier of fact would get a charge out of this case. Instead, Volstar received a jolt when the District Court ordered summary judgment briefing with no discovery. And then, if you bear with me, when we read the District Court's opinion, we found it shocking. In light of Section 289, this Court's precedent in Egyptian goddess and especially the Supreme Court's decision in Gora. You're adapting your argument to the facts. I am. Excellent observation, Judge Lurie. Trying to, perhaps, jolt you awake this Tuesday morning. Thank you for your electrifying presentation. You are most welcome, Judge Gilstrap. There were two fundamental errors that this Court should correct by reversal, vacation, and reversal of the summary judgment. The first one, Amazon concedes, and that is the comparison of Volstar's design patent drawings, not with the accused product, but relying on a misreading of the Payless case with the Amazon design patent drawings violated Section 289. I understand your point, but if we conclude, having read the entire record and gone through all the arguments, that the design, Amazon's design, and its accused product are materially identical, why isn't that a sufficient basis for us to affirm?  Because if you were relying upon the District Court's findings of fact and making no findings of fact of your own, then you will find no findings at all with respect to who the ordinary observer is in this case. That's not my question. We're not at the ordinary observer yet. I'm talking about the alleged error you point out, which is that the District Court was comparing the design patent to Amazon's patent and not to Amazon's product. We can get to the ordinary observer later if you'd like, but my question is if everything in the record indicates that there's no difference, there's no daylight between Amazon's product and its patent, why isn't what the District Court did just fine? Isn't it harmless error? Your Honor, it can't be harmless error for a number of reasons. First of all, it's clear that this Court, in its decisions and Section 289, require a comparison of the patent with the actual three-dimensional product. That wasn't done at all. There are a number of important reasons that distinguish the design patent of Amazon's, a two-dimensional drawing, with the actual product. For one thing, these drawings in the patent are very clear, and we can see that there are substantial differences between the drawings and the patent. As you know, that's what is claimed, namely what the drawings show. There's a substantial difference in several respects between the patent drawings and the accused product. So if you recognize that there are differences between Amazon's drawings and Amazon's product… No, I think I may be wrong. I thought Judge Lawyer was talking about the differences between your patent. Right. Oh, I see. And the Amazon patent. Right, okay. So if you're comparing patent to patent, then just like the District Court, you're violating 289, which requires that in order to find infringement, that anyone who applies the patented design or any colorable imitation thereof to any article of manufacture, not to any patent showing a drawing that looks like an article of manufacture… The assumption here is that, and you put on no evidence, there was no argument in your brief or in your submission, that what the distinction is between the Amazon patent and the Amazon product. Why couldn't one necessarily infer that the two could be used interchangeably? In other words, you look at the Amazon product, you look at the Amazon patent, no difference in saying, as Judge Lawyer said, harmless error. Actually, there was argument in our briefs, for example, that relate to the cab lines. So Amazon filed its motion for summary judgment and said that these cab lines that are found on both patents represent facets or bevels. And that isn't true. Amazon receded from that subsequently, that they represent a change in the surface. Now those cab lines exist in both the patent and Amazon's design patent, right? But you were talking about your patent and Amazon's product, right? That's what we should talk about. Exactly right. And we can see the difference. Yes. In several respects. You certainly can. Therefore, the finding of non-infringement was correct. Your Honor, you need to see the difference from the lens of the ordinary observer, though. That's what this Court's decision in Egyptian Goddess says, in fact, that's what the Gorham decision says. And there isn't anything in the record to demonstrate who that ordinary observer, that hypothetical ordinary observer is. Is it someone who takes very careful and studied attention to the handle of a spoon or a fork, because it's silver and it's expensive? Or is it someone who pays very little attention, because they need a charger right away for their device, and it's only $10 anyway, and so they go and they grab it from the shelf? Is the ordinary observer being deceived under that circumstance or under the Gorham circumstance? So there wasn't any factual determination whatsoever, nor is there anything in the District Court's decision about who this ordinary observer, this hypothetical ordinary observer is. Well, I looked through the record for that. It didn't seem to me that either party, in other words, including you, really prompted the District Court. Was there a dispute? Did you say the ordinary observer is such and such, and your friends say no, it's such and such, and so the District Court clearly had to decide it? I didn't see any of that in the record, right? Well, Your Honor, it is in the record. You need to look at the opinion of Cooper Woodring, our expert, both in opposition to Amazon's motion for summary judgment, and it was also submitted in support of our motion. And Mr. Woodring, who designed products just like this, Do you have a cite to the appendix for that? Yes, I do. His declaration was submitted at docket 37. In the joint appendix, you can find it on page JA 172. Okay. And Mr. Woodring, who designed one of the items in the prior art and worked for JCPenney, described how the ordinary observer, the hypothetical ordinary observer of this product, would view this under what circumstances they would view it. And there was nothing submitted by Amazon on this point, and we had no discovery. That's the other problem. So when Your Honor asks me, well, what's in the record about who the ordinary observer is, neither plaintiff nor defendant had any opportunity to take a deposition from Amazon and say, who's the typical purchaser of this product? Or to depose purchasers and say, how much of attention did you give when you purchased this product? So that isn't there. The district court went immediately to summary judgment without allowing any discovery, and the opinion of Mr. Woodring was disregarded in this case. Did either side ask for oral argument before the district court, or did neither side ask for oral argument? You know what, Your Honor? Did they ask for it and the court said no? What happened? Your Honor, I don't know. My partner has admitted in the Northern District of Illinois, and I am not, I need to go look at the record and let Your Honor know about that. I'm not sure how exactly it was determined that it went directly to submission without oral argument. So you don't know if you asked for it and didn't get it or never asked for it? I'm not sure whether we did or didn't ask for it or did or didn't ask for it and not get it. So there was no factual inquiry at all. And as I was saying, Amazon concedes that the test that was employed was the wrong test. And the second point, the failure to determine the ordinary observer, an indispensable factual determination, didn't occur. And Amazon asks this court to affirm, based upon your De Novo review, which we discussed a moment ago. Are you suggesting if your complaint about the ordinary observer that the district court didn't identify who that ordinary observer is or that he didn't use those words in his analysis? Well, we don't know who the ordinary observer is because, as Your Honor indicated, the district court didn't identify. And who did your expert say the ordinary observer was? The ordinary observer would be someone who would be buying a $10 charger product. And because we had no discovery as to that, the expert's report is all that there is in terms of facts in the record. Okay, so there's no evidence that there's a dispute between the sides as to who the ordinary observer is, someone who's buying this product, right? I don't think that there is a dispute factually that the ordinary observer is someone who is buying this product. Okay. But if you look at the court's analysis, the court's analysis gives such attention to detail that would not be the sort of attention that an ordinary observer who is buying a $10 accessory product would give. And so by failing to identify and describe the ordinary observer, right, the district court can only be assumed to have found an ordinary observer of its own choosing that we don't know, perhaps a district court judge who isn't familiar with purchasing these products. We just don't know. There was no discovery. There was no factual determination of the hypothetical. I guess I'm a little unclear. Yes, Your Honor. We don't have any design patent cases. Let's assume there's no dispute. Everybody agrees an ordinary observer is the person, the run-of-the-mill person that buys this product. Are you saying more than that, that there had to have been surveys or something of that kind with respect to not just that the district court didn't identify the ordinary observer, but he didn't rely on any extrinsic evidence pointing to what that ordinary observer would have thought? I'm just trying to understand your argument. The argument is, Your Honor, that this court's precedent requires him to determine who the ordinary observer is and then view the infringing product, the allegedly infringing product, through the eyes of the ordinary observer with knowledge of the prior art. Let me ask you this, counsel. Yes. For purposes of argument, say that we agree with you that the district court made the wrong comparison. For purposes of argument, let's say we agree with you that it should have identified the ordinary observer and didn't. But at the end of the day, if there's no real dispute that the accused products are nearly identical to Amazon's patent and the accused products are clearly different than your patent, why is that not the right result despite all the other smoke and mirrors? Why isn't that the right result that we shouldn't affirm? And end up where we started earlier in this discussion, saying that all those things that you're pointing at are in effect harmless. Because, Your Honor, they can't be harmless. Why can't they be harmless? Because we haven't had any factual determination whatsoever, as required by Gorham, as required by this court's precedent, of who is making that decision. It isn't in the ordinary observer eyes of a judge. It's in the ordinary hypothetical purchaser of this product giving the attention that such a person would give with knowledge of the prior art. And you would need to define who that purchaser is, reference the prior art, and you'll find that the plaintiff's patent and the defendant's product or its design patent are very different from the prior art, such that Gorham suggests when that occurs, there is more likely infringement than not. When you have a design in the patent that is more like the infringing product than the prior art, Gorham says, then you find that there will be more likely infringement under those circumstances. So if that's the case, then certainly it can't be harmless error because you have a situation where you've got two items, a design, whether it be the actual product. My time is up. I'll reserve for public. You can finish your sentence. You have a situation where you have, you're comparing two things and those two things are more alike than anything in the prior art, then it can't possibly be harmless. Why don't we, we'll restore two minutes of rebuttal if you need it later on. Yes. It is your honor, thank you. Good morning and may it please the court. Let me begin by addressing this question of discovery. With apologies to the court, this is not in the joint appendix, but on the date where Judge Lee granted leave to us to file an early summary judgment motion, he admonished Bolstar's counsel in court that if Bolstar thought it needed discovery, it could under the normal application of Rule 56, submit a declaration asking for the additional discovery and he would allow it. He even set a date for them to submit an affidavit asking for discovery under Rule 56 and when that date came, they did not submit a declaration seeking discovery under Rule 56. In fact, what they did was they eventually filed a cross motion for summary judgment, which seems to me would constitute a concession that there was no need for discovery because there was no genuinely disputed material issue of fact with respect to who the ordinary observer would be or on any other potential fact dispute. Okay, so you know you've got sort of a hurdle in this case, right? And that is that the district court arguably did the wrong comparison between the patent as opposed to Amazon's product. How do we get around that without doing findings of fact in the first instance here that there's no daylight between your patent and the product? Well, I think the answer is, Your Honor, that the review here is de novo and this court can look at the pictures of the accused product, not the figures from Amazon's patent. Those pictures appear in our brief at pages 19 through 24 on page 28 and one can clearly see that the accused Amazon charger is plainly dissimilar from the design that is claimed in Volstar's patent. It doesn't require, I think, it doesn't require anything more than the court to agree with that simple proposition and the court here should affirm the judgment below. Does de novo review mean that this court should effectively become a fact finder? I don't think so, Your Honor, because you're not going outside the record. You're making a decision based on... But within the record of being a fact finder. You're asking us to determine commonality or similarity between the product and the patent. Well, I'm not asking the court to do that. I think the court has been given the responsibility to do that under Egyptian goddess. I think the question at the outset, the threshold question in design patent cases is whether the accused device is plainly dissimilar in its ornamental design from the ornamental design that's claimed in the patent. Are you saying there's no genuine issue of fact that they're quite different? I'm saying there's no genuine issue of fact on that subject, Your Honor, and that Judge Lee got it right even though his methodology was incorrect, which I concede. But this court...  for getting it wrong because we always assume that the parties were the district court astray. Do you know where this came from? Your Honor, we don't know where it came from. With our moving papers, we submitted photographs of the accused charger, and we pointed to the photographs, and we thought Judge Lee, one of our terrific judges in Chicago, we thought Judge Lee would make the right comparison. We were surprised when he didn't, but we saw quickly it didn't make a difference because the figures from the patent that depict the charger show the same thing that are shown in the pictures of the charger. And so when one makes the correct comparison, the outcome is the same. Other than this, what I will call a confusing argument about the conventions in the CAD drawings possibly having confused the district court, other than that, bold stars pointed to nothing that would result in a different outcome if the judge had made the correct comparison in the first place. And I think this argument about the CAD drawings, which comes up for the first time really in the reply brief, I think that's just wrong. It's contrary to what they said in the court below. In the court below, they conceded, and this is in the joint appendix at page 160, paragraph 133, Bold Star conceded, quote, Amazon's 409 design patent uses the exact same CAD drawing convention as Bold Star's 192 design patent. So if the CAD drawing conventions are the same, it shouldn't have confused the court. In fact, if anything, it may have made Amazon's accused charger look more similar to what's claimed in the Bold Star patent, and not less similar. So it may have actually... What about Mr. Woodring's expert report and the deficiencies that your friend identifies in terms of the ordinary observer? Well, I think that I agree in a fundamental way with what Mr. Rothman argued. I don't think the court's precedent requires that the ordinary observer be identified. I think quite the opposite is true. In fact, the court in Egyptian Goddess didn't spend time talking about who the ordinary observer would be, and I think that the correct way to understand the ordinary observer, and this again is based on the court in Egyptian Goddess referring to the ordinary observer again and again, it's a hypothetical. I think the correct way to think about the ordinary observer is that it's an objective hypothetical standard, and it includes no standards of fact. It's much more like the reasonable person standard in negligence law than it's like the pasita in utility patent cases. We do litigate who the pasita is in utility patent cases, but we don't litigate who the reasonable person is in negligence cases, and it seems to me that the way... Isn't there a difference? Aren't there circumstances if we're talking about something that sells for a penny in bulk, or we're talking about a product, you know, some car or watch that sells for $200,000, who the ordinary observer is. That factor, the purchaser, right, does play into it in terms of the depth and detail in which one would look at the product and so forth. Isn't that a factor in design patent cases? Well, I think it must be. I'll read from the Gorman v. White case, which, of course, is the foundational case, even more so than Egyptian Goddess, and what the Supreme Court said there... Was that dishes? Pardon me? Was that dishes? It was a pattern on silverware, I believe. Oh, okay. What the Court there said, if in the eye of the ordinary observer, giving such attention as a purchaser usually gives, which is the point relevant to Mr. Rothman's point, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one, supposing it to be the other, then the first one patented is infringed by the other. And so, at the same time that the Court announces that the standard is deception, we are to take into account this notion of giving such attention as a purchaser usually gives. But that doesn't mean that this is a subject of dispute. It doesn't mean... And it wasn't disputed in this case. I mean, even theoretically, it's possible to dispute it and to litigate it in the district court and so forth. It wasn't disputed here. But I think it's... I don't think it's a proper subject for discovery in any event. We don't take discovery in who the reasonable man is. And I don't think we're... I don't think we're authorized to take discovery in who the ordinary observer is. And I don't see anything in this Court's jurisprudence suggesting that there's a requirement that the Court inquire as to the characteristics of an ordinary observer. It was not done in the Egyptian goddess case. And we don't see it being done in any other case, any other opinion that this Court has written. And the lower courts don't do it either. It simply isn't a part of design patent litigation and it shouldn't become a part of design patent litigation because imagine what would happen if that were true. If it became possible to avoid summary judgment just by raising a dispute about who the ordinary observer is, something that's always... It's always possible to dispute that. If that were enough to stop the District Court from granting summary judgment where an accused product is plainly dissimilar to a patented design, then imagine the consequences. We'd be litigating cases that are meritless cases that don't require further litigation just because there is a dispute about who the ordinary observer is. And in fact, we don't let that happen even in utility patent cases. I don't remember ever seeing this Court reversing a grant of summary judgment in a utility patent case just because there was a dispute about who the person of ordinary skill in the art would be. It simply doesn't make sense to place that kind of importance on the concept of ordinary observer in these design patent cases when the Court is authorized by the plain holding in Egyptian goddess that the lower court is authorized to use its judgment through the lens of the ordinary observer to make a decision as to whether or not the accused device is plainly dissimilar. And that's what Judge Lee did here. He didn't do it exactly right, but it turns out that he got it exactly right, even though his methodology was flawed. I think I will stop now unless the Court has further questions for me. Thank you very much. Thank you. Your Honors, first of all, with respect to the facts related to the ordinary observer, you will see on the record at JA 179, Mr. Woodring at paragraph 11 discusses his experience in observing purchasers of consumer electronics and how he is qualified to testify as to how ordinary observers visually perceive and evaluate consumer electronics products such as the products in this case. He says he conducted research into how ordinary observers evaluate, compare, and purchase ornamental products like the ones in this case. He studied and learned the habits and customs of ordinary observers in the purchasing environment, etc., etc. And he goes on to conclude that this ordinary observer is a less discerning observer because of a number of things, the cost of the product, the size of the product, etc. Now, it is not true that this Court has not ruled as to the identification of the ordinary observer. In fact, this Court did exactly that in the Armanach and Associates case, which was all about who should be the ordinary observer of the trigger sprayer. Should it be the wholesale purchaser who is looking at it in a commercial context or the retail purchaser who is buying a bottle from the shelf and spraying it? So you're arguing a factual dispute now when your client sought summary judgment below saying there were no material disputed issues of fact, and you're appealing the trial court's refusal to grant your summary judgment? Your Honor— And yet you're arguing that there are disputed facts now? Your Honor, what I am arguing is that there are facts in the record which are uncontroverted by Amazon that show who the ordinary observer of this product is, and there is law from this Court that says that in deciding a design patent infringement case one must identify, at the very least, enunciate whose eyes the ordinary observer is looking through. Is it someone very sophisticated or is it someone unsophisticated, etc.? And your Honors can make a de novo decision based upon what is in the record before you. You can look at the expert— I see my— Just finish your thought. You can look at Mr. Woodring's report. You can decide whether Mr. Woodring is someone who speaks of the ordinary observer.  if that's the correct ordinary observer, and you could rule for Volkstar, but at the very least, Your Honors, must reverse because otherwise Section 289 is meaningless. Thank you very much. Thank you. We thank both counsel and the cases.